[Cite as *State v. Saunders*, 2017-Ohio-7348.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellant | : | Hon. Earle E. Wise, Jr. J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 17CA0001 |
| TONY L. SAUNDERS | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:     Appeal from the Morrow County Municipal
                             Court, Case No. 2016-TRC-331, 332

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      August 23, 2017

APPEARANCES:

For Plaintiff-Appellant          For Defendant-Appellee

THOMAS SMITH                     STUART BENIS
60 East High Street              286 South Liberty Street
Mount Gilead, Ohio 43338         Powell, Ohio 43065

*Hoffman, J.,*

**{¶1}**  Plaintiff-appellant state of Ohio appeals the January 3, 2017 Judgment Entry entered by the Morrow County Municipal Court granting a motion to suppress evidence in favor of Defendant-appellee Tony Saunders.

STATEMENT OF THE FACTS AND CASE

**{¶2}**  On January 17, 2016, Appellee Tony Saunders was involved in a one-vehicle accident on Interstate 71 in Morrow County, Ohio. As a result of the accident, Saunders was trapped inside the vehicle. A witness on the scene smelled a strong smell of an alcoholic beverage emanating from Saunders' person, and the witness reported observing Saunders leaving the VFW in Sunbury around 2:00 a.m.

**{¶3}**  Emergency medical personnel transported Saunders to Morrow County Hospital. Ohio State Highway Patrol Trooper Sutterluety spoke with Saunders in route to the hospital, and reported smelling a strong smell of alcoholic beverage on his person. He also observed Saunders had red, bloodshot, glassy eyes.

**{¶4}**  At the hospital, Saunders was treated by Dr. Larry Elliott.  Dr. Elliott ordered blood work to determine Saunders blood alcohol level.

**{¶5}**  On January 18, 2016, Trooper Sutterluety completed a Request for Release of Health Care Provider Records to obtain the results of Saunders' lab tests, pursuant to R.C. 2317.02(B)(2). The lab results indicated the presence of alcohol in Saunders' blood at the time of draw. As a result, Saunders was charged with violations of R.C. 4911.19(A)(1)(a) and 4511.02.

{¶6}   On February 23, 2016, Saunders filed a motion to suppress evidence. On April 29, 2016, Saunders filed a supplement to his motion to suppress. On December 1, 2016, the State filed a response, including an affidavit of Dr. Larry Elliott.  The affidavit averred the lab tests, specifically the test of Saunders' blood alcohol level, were done for medical purposes, not for forensic or law enforcement purposes. The blood sample was drawn and analyzed only by employees of Morrow County Hospital.

{¶7}   Via Judgment Entry of January 3, 2017, the trial court granted Saunders' motion to suppress the evidence.

{¶8}   The state of Ohio appeals, assigning as error:

{¶9}   I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION TO SUPPRESS.

{¶10}  The state maintains the trial court erred in granting Saunders' motion to suppress the lab results requested pursuant to R.C. 2317.02 and R.C. 2317.022.

{¶11}  R.C. 2317.02 provides, in pertinent part,

(2)(a) If any law enforcement officer submits a written statement to a health care provider that states that an official criminal investigation has begun regarding a specified person or that a criminal action or proceeding has been commenced against a specified person, that requests the provider to supply to the officer copies of any records the provider possesses that pertain to any test or the results of any test administered to the specified person to determine the presence or concentration of alcohol, a drug of abuse, a combination of them, a controlled substance, or a metabolite of a

controlled substance in the person's whole blood, blood serum or plasma, breath, or urine at any time relevant to the criminal offense in question, and that conforms to section 2317.022 of the Revised Code, the provider, except to the extent specifically prohibited by any law of this state or of the United States, shall supply to the officer a copy of any of the requested records the provider possesses. If the health care provider does not possess any of the requested records, the provider shall give the officer a written statement that indicates that the provider does not possess any of the requested records.

{¶12} R.C. 2317.022 provides, in pertinent part,

(B) If an official criminal investigation has begun regarding a person or if a criminal action or proceeding is commenced against a person, any law enforcement officer who wishes to obtain from any health care provider a copy of any records the provider possesses that pertain to any test or the result [footnoted omitted] of any test administered to the person to determine the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in the person's blood, breath, or urine at any time relevant to the criminal offense in question shall submit to the health care facility a written statement in the following form: * * *

* * *

(C) A health care provider that receives a written statement of the type described in division (B) of this section shall comply with division (B)(2) of section 2317.02 of the Revised Code relative to the written statement.

**{¶13}** Appellee Saunders argues R.C. 2317.02 and 2317.022 are constitutionally deficient as the statutes do not provide notice to the patient of the request, nor a factual basis upon which the request is made to support a finding of reasonable and articulable suspicion. Saunders moved the trial court to suppress the records as they were obtained pursuant to a warrantless search.

**{¶14}** The Third District addressed the constitutionality concerns raised by Saunders in *State v. Clark*, 3rd App. No. 5-13-34, 2014-Ohio-4873 and *State v. Little*, 3rd Dist. App. No. 2-13-28, 2014-Ohio-4871.

Clark seems to argue that the statutory provisions at issue in this case infringe upon his interest in avoiding disclosure of personal matters. [Citation omitted.] But he fails to establish a *significant and inevitable* threat of unauthorized disclosure of protected personal information *to the general public.* The statutes restrict the individuals who can make a request for medical records to "law enforcement officers," alleviating Clark's concern that his protected personal information will be disclosed by the hospital directly to the general public. R.C. 2317.02(B)(2)(a). As discussed above, the concern addressed by procedural safeguards in *Whalen* [*Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)] was the disclosure

of the patients' information *to the general public* and not disclosure to the law enforcement officers in a criminal investigation. [Footnote omitted.]

Relying on the United States Supreme Court and the Ohio Supreme Court's holdings that a mere threat of disclosure to the general public does not make a statute unconstitutional, but that the threat must be significant and inevitable, we do not find that Clark has satisfied his burden of proving that this statutory scheme is unconstitutional under *Whalen.*

**{¶15}** The constitutional proscriptions of the Fourth Amendment and the exclusionary rule apply only to government action, not the actions of private persons. *Clark,* supra.   It is undisputed the blood draw herein was conducted for medical purposes by a private entity. Saunders does not challenge the constitutionality of the blood draw; rather, the police action in requesting a copy of the lab results in his medical records without first securing a search warrant.

**{¶16}**  As stated in *Clark*, supra,

Therefore, this case is about the power of the police to perform a warrantless search of a patient's medical records; in particular, the results of medical tests that have been previously properly performed by the hospital and that show a concentration of alcohol or drugs of abuse at the time of a suspected criminal offense.

**{¶17}** The Fourth Amendment protects persons from unreasonable searches and seizures by the government. Section 14, Article I of the Ohio Constitution provides the same protections as the Fourth Amendment. Evidence seized in violation of the Fourth Amendment will be suppressed pursuant to the exclusionary rule. The defendant must have a reasonable expectation of privacy in the evidence seized for standing to challenge the search or seizure. *City of Marion v. Brewer*, 3rd Dist. No. 9-08-12, 2008-Ohio-5401, citing *State v. Jackson*, 102 Ohio St.3d 380, 811 N.E.2d 68, 2004-Ohio-3206. A citizen has a reasonable expectation of privacy in his or her medical records. *Ferguson v. City of Charleston*, 532 U.S. 67, 121 S.Ct.281, 149 L.Ed.2d 205 (2001).

**{¶18}** In both *Clark* and *Little,* the Third District opined the fact the statutory scheme at issue waives the physician-patient privilege for purpose of testifying at trial does not circumvent the Fourth Amendment protections against unreasonable searches and seizures.

**{¶19}** In *Clark*, the Third District held,

The recent decision of the United States Supreme Court in *Missouri v. McNeely,* ⸺ U.S. ⸺, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), supports a holding that an OVI suspect's expectation of privacy should not be diminished easily. In *McNeely,* the United States Supreme Court limited situations in which a police officer can request a blood test of an OVI suspect without a warrant to only those individual instances in which obtaining a warrant would be "impractical." *Id.* at 1561. The Supreme Court mandated a case-by-case approach, rejecting the state's contention "that

exigent circumstances necessarily exist when an officer has probable cause to believe a person has been driving under the influence of alcohol because BAC evidence is inherently evanescent." *Id.* at 1554, 1561.

In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so. See *McDonald v. United States,* 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948) ("We cannot ... excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made [the search] imperative").

*Id.* at 1561.

\*\*\*

Therefore, we hold that an OVI suspect in Ohio enjoys a reasonable expectation of privacy in his or her medical records "that pertain to any test or the result of any test administered to the person to determine the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in the person's blood, breath, or urine at any time relevant to the criminal offense in question," which are stored securely in a hospital. R.C. 2317.022(B). It follows that, prior to obtaining such medical records a law enforcement officer must comply with the warrant requirement of the Fourth Amendment.

{¶20} It is undisputed law enforcement officers did not obtain a warrant prior to obtaining Saunders' medical records. Warrantless searches are per se unreasonable unless one of the enumerated exceptions to the warrant requirement applies. *McNeely,* 133 S.Ct. at 1558; *State v. Kessler,* 53 Ohio St.2d 204, 207, 373 N.E.2d 1252 (1978). The burden is on the state to establish a warrantless search is valid under one of those exceptions. *City of Xenia v. Wallace,* 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988).

{¶21} The Ohio Supreme Court explicitly recognized the following seven exceptions to the requirement a warrant be obtained prior to a search:

{¶22} (a) a search incident to a lawful arrest;

{¶23} (b) consent signifying waiver of constitutional rights;

{¶24} (c) the stop-and-frisk doctrine;

{¶25} (d) hot pursuit;

{¶26} (e) probable cause to search, and the presence of exigent circumstances;

{¶27} (f) the plain view doctrine; and

{¶28} (g) administrative search.

{¶29} *Stone v. City of Stow,* 64 Ohio St.3d 156, 165, 593 N.E.2d 294 (1992).


{¶30} The state does not argue any of these enumerated exceptions apply in this case. No exigency exists in circumstances where, as here, the tests have already been performed and their results are safely stored by the hospital. In addition, the exceptions do not include a police officer requesting and searching records of medical tests, previously properly performed by the hospital, where no arrest, consent, hot pursuit, or probable cause and exigent circumstances exist.

**{¶31}** As set forth in *Clark* and *Little*, supra,

This conclusion does not, however, mean the statutory scheme at issue is unconstitutional. We merely hold that R.C. 2317.02(B)(2)(a) and R.C. 2317.022 do not authorize a warrantless search and seizure of the patient's medical records where no recognized warrant exception exists. Accordingly, the use of R.C. 2317.02(B)(2)(a) and R.C. 2317.022 without a warrant to obtain Clark's medical records violated his constitutional protection against unreasonable search and seizure.

**{¶32}** We adhere to the reasoning set forth in the Third District's holdings in *Clark* and *Little,* and find the use of R.C. 2317.02(B)(2)(a) and R.C. 2317.022, without a warrant or exigent circumstances justifying a warrantless search, violates Saunders' constitutional protections against unreasonable searches and seizures.

**{¶33}** There is no dispute the State did not obtain a warrant for Saunders' medical records, nor did circumstances exist creating an exception to the warrant requirement. A warrant was not issued; therefore, the State cannot argue it executed the warrant in good faith. The State's sole assignment of error is overruled.

{¶34} The January 3, 2017 Judgment Entry entered by the Morrow County Municipal Court is affirmed.

By: Hoffman, J.

Delaney, P.J. and

Wise, Earle, J. concur